**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION**

EUGENE SMITH, III,

    *Petitioner,*                 CRIM. CASE NO: 1:16-cr-20677
                              CIV. CASE NO.: 1:18-cv-12227
v.                                DISTRICT JUDGE THOMAS L. LUDINGTON
                                MAGISTRATE JUDGE PATRICIA T. MORRIS

UNITED STATES OF AMERICA,

    *Respondent.*
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
AFTER EVIDENTIARY HEARING ON PETITIONER'S 28 U.S.C. § 2255 MOTION
TO VACATE, SET ASIDE, OR CORRECT SENTENCE (R.552)**

**I.    RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Petitioner's motion to vacate be **GRANTED** and that he be permitted to file an out-of-time appeal.

**II.    REPORT**

    **A.    Introduction**

Petitioner Eugene Smith, III's 28 U.S.C. § 2255 motion to vacate his prison sentence (Mot. to Vacate, R.552), is before the Court under an order of reference from United States District Judge Thomas L. Ludington. (R.555.)

On August 15, 2017. Petitioner Eugene Smith, III ("Petitioner" or "Smith") pleaded guilty to conspiracy to possess with intent to distribute and to distribute cocaine and heroin in violation of 21 U.S.C. §§ 841(a)(1) and 846 pursuant to a Rule 11 plea agreement. (R.374.) Pursuant to a judgment filed on March 9, 2018, Petitioner was sentenced to 136 months' incarceration. (R.525 at PageID.3245.) Petitioner did not file an appeal.

On July 10, 2018, Petitioner filed the instant motion to vacate his sentence pursuant to 28 U.S.C. § 2255 (R. 552). The petition raises one ground: that trial counsel was ineffective because Petitioner "requested his Legal Counsel file an Appeal in his case subsequent to the Sentencing Hearing and the Attorney told the Movant that he could not because the Movant had taken a Rule 11(c)(1) Plea Agreement with a No Appeal Clause in it" but that "Movant has since learned that it was his Attorney's responsibility to file at least a Notice of Appeal in his case when he was directed to do so by the Movant." (R.552 at PageID.3436.) Petitioner verified his motion and brief by stating, "I . . . do hereby swear that the foregoing statements are true and correct to the best of my limited knowledge and ability to so state, under the Penalty of Perjury . . . ." (R.552 at PageID.3450.) In addition, Petitioner attaches a notarized affidavit confirming the same and expressly stating that Petitioner "told Attorney [] that I still wanted to file an Appeal" even after counsel told him he could not. (R.552 at PageID.3451-3452.)

The government noted that the "failure of counsel to file an appeal when explicitly directed to do so is per se ineffective," that Petitioner supports his motion with his own affidavit (as well as one from his father), and that although Petitioner's counsel has denied that Petitioner ever requested counsel file an appeal in his own affidavit (R.574, Ex. A,) an evidentiary hearing would be necessary to resolve this issue of fact. (R.574 at PageID.4124-4125.) Accordingly, the government requested the Court conduct an evidentiary hearing "and allow Smith to attempt to develop his claim." (R.574 at PageID.4125.)

A previous Report and Recommendation (R&R) recommended that an evidentiary hearing be held as to the sole issue raised in the petition and that R&R was adopted. (R.640.) The Court also referred the matter to the undersigned to conduct the hearing and make a recommendation on

2

the merits. (*Id.*) A hearing was held on March 26, 2019, and the parties were given permission to submit any memoranda regarding the applicable burden of proof by the end of the week. Petitioner filed such a memorandum citing case law establishing that the burden of proof is by a preponderance of the evidence. (R.660.)

**B.     Evidentiary Hearing**

At the evidentiary hearing, Petitioner submitted five exhibits, all of which are documents available on the Court's docket except the presentence report. Petitioner offered these to support his argument that trial counsel's general neglect of matters evidenced therein tends to show that trial counsel likely neglected to follow through in filing a notice of appeal after having been requested to do so. The proffered matters neglected were trial counsel's failure to note/argue Petitioner's criminal history category (which was determined later to be category III rather than IV); failure to file a sentencing memorandum in a timely fashion, requiring the sentencing date to be adjourned; and failing to include § 3553 arguments into the sentencing memorandum that was finally submitted.

Petitioner's father, Eugene Smith, Jr., testified first. He stated that he called trial counsel's office; counsel was not available, but he told counsel's secretary that Petitioner wanted to file an appeal. Counsel's secretary indicated she would pass the message on to counsel but since counsel did not return his call, Eugene Smith, Jr., called the office a second time and was told by counsel's secretary that she had spoken to trial counsel and that counsel had indicated that Petitioner was not able to file an appeal. This testimony stands uncontradicted.

On cross-examination, when asked why Petitioner wanted to appeal, Eugene Smith, Jr., responded that Petitioner had told him there were "discrepancies" and that some facts that should

3

have been presented at sentencing were not. He added that he had also requested counsel's office send the materials needed to file an appeal.

Petitioner testified that immediately after being sentenced, he had asked trial counsel to file an appeal and counsel had indicated that he would come "upstairs" (to the Marshal lockup) and talk with him about it, but that counsel never came. Petitioner also testified that although the Rule 11 plea agreement contained a waiver of his right to appeal, his trial counsel and the undersigned magistrate judge told him that he could ignore that provision and that he could appeal despite the waiver. Petitioner was impeached by transcribed testimony at the plea hearing and the sentencing hearing. It was also noted that at the close of the sentencing hearing, the sentencing judge went over the appellate waiver in the plea agreement and noted that Petitioner waived his right to appeal his conviction on any grounds and waived his right to appeal his sentence as long as his sentence did not exceed 188 months, which it did not. (R.558 at PageID.3491.) In addition, the judge told Petitioner, "I want to be sure [] that Mr. Smith understands that even if he believes he might have a right that would escape that appeal waiver to have the Court of Appeals review any of the issues that we've decided during the course of the case, that he understands that he still needs to file a claim of appeal within 14 days to be timely in protecting that right." (*Id*.) The Court then asked trial counsel if he had "had a chance to talk with [Petitioner] about that subject," to which counsel responded, "We have broached that subject, Your Honor." (*Id*.)

Trial counsel then testified that he had served on the Criminal Justice Act panel as a defense attorney for at least twelve years, perhaps more. He stated that he has never told any client to ignore a part of the plea agreement and he agreed that this would be entirely inconsistent with his training, practice, and experience. Counsel further testified that he negotiated a second plea

4

offer/agreement for his client because the first agreement did not allow Petitioner to contest the enhancements for using a firearm and maintaining a drug house. The second plea agreement, under which Petitioner entered his guilty plea, allowed for the enhancements to be challenged at sentencing. Counsel indicated that he went over the plea agreement and told Petitioner he would not be able to appeal his sentence unless sentenced in excess of 188 months. Counsel further testified that immediately after sentencing, Petitioner did not say anything about an appeal; Petitioner was not happy with the sentence, but did not ever ask to file an appeal. Counsel added that if Petitioner had asked to file an appeal, counsel would have filed the notice because he is required to and it is his practice to do that. Counsel also stated that he has never filed a notice of appeal in any federal criminal case.

When asked what counsel meant by saying, at the sentencing hearing, that counsel had "broached the subject" of appeal with Petitioner, counsel indicated that he was referring to the time when he went over the plea agreement with Petitioner and explained the waiver to him. Counsel was asked if he had explained to Petitioner that if requested to do so, counsel would file a notice of appeal on behalf of Petitioner, likely accompanied by an *Anders*[1] brief indicating there are no non-frivolous appellate issues because of the appeal waiver. Trial counsel responded that he does not ever consult with and explain this to his clients and that he did not consult with and explain this to Petitioner.

### C.   Governing Law and Analysis

It is well settled that "a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*,

---

[1] *Anders v. California*, 386 U.S. 738, 744 (1967).

5

467 U.S. 504, 507–08 (1984). Plea agreements are contractual in nature, so courts are guided by general principles of contract interpretation when considering them. *United States v. Moncivais*, 492 F.3d 652, 662 (6th Cir. 2007). A plea agreement is a bargained-for exchange that does not implicate the Constitution when it is entered into knowingly and voluntarily. *Mabry*, 467 U.S. at 508 ("It is only when the consensual character of the plea is called into question that the validity of a guilty plea may be impaired."). "[I]n cases where a defendant argues that his [or her] plea was not knowing or voluntary, or was the product of ineffective assistance of counsel . . . it would be entirely circular for the government to argue that the defendant has waived his [or her] . . . right to collateral attack . . . ." *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007). On the other hand, "[e]nforcing appeal waivers makes good sense as well. A waiver of appellate rights gives a defendant a means of gaining concessions from the government. The government benefits, too, by saving the time and money involved in arguing appeals." *United States v. Toth*, 668 F.3d 374, 379 (6th Cir. 2012) (citations omitted).

Therefore, as long as the plea was knowing and voluntary, and not the product of ineffective assistance of counsel, the waiver will be enforced. *Id.* The Supreme Court enunciated the standard for voluntary and intelligent pleas in *Brady v. United States*:

> [A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him [or her] by the court, prosecutor, or his [or her] own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

397 U.S. 742, 755 (1970). Additionally, a plea is intelligently made where the defendant "was advised by competent counsel, he was made aware of the nature of the charge against him,

6

and there was nothing to indicate that he was incompetent or otherwise not in control of his mental faculties." *Id.* at 756.

Claims of ineffective assistance of counsel are governed by the Supreme Court's rule pronounced in *Strickland v. Washington*, which requires the movant to show that (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness and (2) the deficiency prejudiced the movant to such an extent that the result of the proceeding is unreliable. 466 U.S. 668, 688–92 (1984). In *Roe v. Flores-Ortega*, the Supreme Court extended *Strickland* to failure-to-file-appeal and to failure-to-consult cases: "[W]hen counsel's constitutionally deficient performance deprives a defendant of an appeal that he [or she] otherwise would have taken, the defendant has made out a successful ineffective assistance claim entitling him [or her] to an appeal" without any further showing. 528 U.S. 470, 484 (2000). The Supreme Court recently confirmed that "the presumption of prejudice recognized in *Flores-Ortega* applies regardless of whether a defendant has signed an appeal waiver," and regardless of whether "a particular defendant seems to have had poor prospects" on appeal. *Garza v. Idaho*, 139 S.Ct. 738, 747–49 (2019). In the same vein, the Sixth Circuit has found that counsel must file an appeal when their client explicitly requests it, "even where an appeal appears frivolous." *Campbell v. United States*, 686 F.3d 353, 358 (6th Cir. 2012) (requiring an *Anders* brief—a brief indicating there are no meritorious grounds for appeal, as described in *Anders v. California*, 386 U.S. 738, 744 (1967)—in such cases).

However, when the defendant "neither instructs counsel to file an appeal nor asks that an appeal not be taken, . . . the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking . . . whether counsel in fact consulted with the

defendant." *Flores-Ortega*, 528 U.S. at 478. Consult means "advising about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* at 471. If counsel did consult with the defendant, then counsel only "performs in a professionally unreasonable manner . . . by failing to follow the defendant's express instructions with respect to the appeal." *Id.* at 478.

The Court next addressed situations where counsel had failed to consult. *Id.* The Court first declined to establish a per se rule that counsel's failure to consult always constitutes deficient performance; instead, a "court must ask . . . whether counsel's failure to consult with the defendant itself constitutes deficient performance." *Id.* The Court articulated two scenarios when the Constitution requires counsel to "consult" with defendant: "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he [or she] was interested in appealing." *Id.* at 479; *see also Granger v. Hurt*, 215 F. App'x 485, 492 (6th Cir. 2007). Although not determinative, a "highly relevant factor . . . [is] whether the conviction follows a trial or a guilty plea." *Flores-Ortega*, 528 U.S. at 480. In addition, courts should consider whether the defendant received the sentence bargained for as part of the plea, and whether the plea expressly reserved or waived some or all appeal rights. *Id.* The term "consult" specifically means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id*. at 478.

The burden of proof Petitioner faces is preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

I suggest that counsel's failure to consult was not deficient with respect to the first scenario laid out in *Flores-Ortega*. This is not a case where "a rational defendant would want to appeal." *See Flores-Ortega*, 528 U.S. at 480. Petitioner has waived this right and there do not appear to be any non-frivolous grounds for appeal.

As to the second scenario, it is a closer call whether "this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *See id.* As noted by government counsel, Petitioner's versions of when and how he communicated a desire to file an appeal differ. In his Petition, he indicates that he "requested his Legal Counsel file an Appeal in his case subsequent to the Sentencing Hearing and the Attorney told the Movant that he could not because the Movant had taken a Rule 11(c)(1) Plea Agreement with a No Appeal Clause in it[.]" (R.552 at PageID.3436.) At the evidentiary hearing, however, Petitioner testified that immediately after being sentenced, he had asked trial counsel to file an appeal and counsel had indicated that he would come "upstairs" (to the Marshal lockup) and talk with him about it, but that counsel never came. Government counsel further argued that Petitioner's testimony (at the hearing or in his affidavit) is not credible because neither trial counsel nor the court would ever advise or tell Petitioner that he could ignore an appellate waiver in a plea agreement or that he could appeal without restriction despite the appellate waiver. In addition, Petitioner's affidavit in support of his motion states that trial counsel "explained to me," but he explained at the hearing that really trial counsel's office/secretary had told Petitioner's father that he was unable to appeal. (R.552 at PageID.3451.) At the hearing, Petitioner conceded that the affidavit was not accurate and that it had been drafted by someone else in prison who helped him with his paperwork. Having had the benefit of seeing the demeanor of the Petitioner, I find that his testimony was not purposefully

9

contrived but rather that Petitioner is not able to grasp subtleties nor is he in full command of the meaning of the words he uses. In other words, I find his testimony conflicted and less than credible but not based on any artifice of Petitioner.

The next question is whether Petitioner may reasonably demonstrate to counsel that he was interested in appealing through the words or actions of another, e.g., an agent. Research has not revealed any case law specifically answering this question directly. However, courts have considered the testimony of others in determining whether a particular defendant reasonably demonstrated to counsel that he was interested in appealing. *Hanlon v. United States*, No: 2:15-cv-704-FtM-29MRM, Case No: 2:14-c4-18-FRM-29MRM, 2016 WL 7049241, at *3 (M.D. Fla Dec. 5, 2016) (finding that "petitioner and his mother reasonably demonstrated, at the least, an interest in pursuing an appeal"); *Cuddington v. United States*, No. 6:18-CV-0019, No. 6:15-CR-0028, 2019 WL 1369046, at *18 (N.D.Tex. Feb. 14, 2019) (While fiance's "chosen terminology may not have been the most precise, she or Movant's father reasonably demonstrated to counsel . . . that Movant was interested in an appeal."); *United States v. Brown*, No. 5:12-79, No. 5:14-7341, 2017 WL 3022322, at *6 (E.D. Ky July 7, 2017) ("[T]he Court finds that none of the evidence shows that Brown or his family reasonably demonstrated to Richardson that Brown was interested in appealing."); *United States v. Garcia-Damian*, CIV No. 16-206, CR No. 15-123, 2016 WL 9631674, at *1 (D.N.M. Oct. 24, 2016) ("[E]vidence in the record, as developed at the evidentiary hearing, demonstrates that Defendant expressed dissatisfaction with his sentence to counsel and did not waive his right to appeal, and that Defendant's wife also expressed interest in an appeal of his sentence.").

Even if Petitioner's testimony is not to be believed, the testimony of his father is unchallenged and establishes that counsel was made aware of Petitioner's desire to appeal. In addition, by counsel's own testimony, counsel was aware that Defendant was not happy with his sentence. Coupling this fact with the actions of Petitioner's father in communicating Petitioner's desire to appeal, I conclude that Petitioner reasonably demonstrated an interest in pursuing an appeal that obligated counsel to contact Petitioner and obtain his decision rather than simply ignoring the situation and avoiding contact with Petitioner and then resting on Petitioner's silence or failure to request an appeal. *Hanlon*, at *3 ("Under the facts and circumstances of this case [where petitioner and his mother demonstrated an interest in appeal], the Court concludes that counsel was obligated to contact petitioner and obtain his decision on an appeal, and could not simply assume silence was a decision to not have an appeal filed."); see also *United States v. Pham*, 722 F.3d 320, 322, 326-27 (5th Cir. 2013) (finding non-English speaking defendant reasonably demonstrated his interest in appealing when he was visibly upset after sentencing and stated that he wanted to do something to get less time); and *United States v. Malone*, 442 F. App'x 864, 867 (4th Cir. 2011) (defendant reasonably demonstrated an interest in appealing where he stated he wanted to appeal after sentencing and his son and daughter-in-law later spoke with counsel about defendant's desire to appeal).

To be sure, application of the other relevant factors in deciding whether this particular defendant reasonably demonstrated to counsel that he was interested in appealing do not help Petitioner's cause. The Supreme Court has indicated that the court may consider whether the conviction follows a trial or a guilty plea, whether the defendant received the sentence bargained for as part of the plea, and whether the plea expressly reserved or waived some or all appeal rights.

11

*Flores-Ortega*, 528 U.S. at 480. In this case, the conviction was via a guilty plea pursuant to an agreement wherein Petitioner expressly waived the right to appeal. Moreover, Petitioner received the benefit of the bargain since his sentence of 136 months was far below the maximum sentence of 188 months allowed by the plea agreement. Thus, Petitioner's chances for success on appeal are slim.

However, where Petitioner has established, by a preponderance of the evidence, that he reasonably demonstrated an interest in appealing, counsel was obligated to consult with Petitioner about the advantages and disadvantages of appeal and ascertain Petitioner's desire regarding an appeal. Counsel failed to consult with Petitioner regarding an appeal in this case and counsel testified that he never does condult. This universal failure to consult is alarming. In addition, counsel's testimony that in his twelve-plus years of federal practice he has never filed a notice of appeal is similarly startling. Counsel is cautioned to review the applicable standards delineated by the Supreme Court in *Flores-Ortega* and *Garza*.

I therefore suggest that Petitioner has met his burden to show that trial counsel was ineffective for failing to consult with him regarding his reasonably demonstrated desire to file an appeal.

Should this recommendation be adopted, I further suggest that the appropriate remedy is for the court to grant Petitioner an out-of-time appeal by re-entering the judgment of conviction to allow Petitioner to file an appeal. *United States v. Rivas*, 450 F. App'x 420, 429 (5th Cir. 2014).

**D.     Conclusion**

For these reasons, I recommend that Petitioner's motion to vacate sentence (Doc. 552) be granted.

### III. <u>REVIEW</u>

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: April 1, 2019  S/ PATRICIA T. MORRIS
Patricia T. Morris
United States Magistrate Judge

## **CERTIFICATION**

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: April 1, 2019                                        By s/Kristen Castaneda
                                                              Case Manager