UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

        Case No. 1:16-cr-20677-8
        Honorable Thomas L. Ludington

EUGENE SMITH, III,

        Defendant.
_____/

**ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE AND DENYING DEFENDANT'S REQUEST FOR A JUDICIAL RECOMMENDATION OF TRANSFER**

On August 15, 2017, Defendant Eugene Smith, III pled guilty to one count of conspiracy to possess with intent to distribute and to distribute cocaine and heroin, in violation of 21 U.S.C. § 841(a)(1) and 846. ECF No. 374. He was sentenced to serve 135 months in prison followed by a four-year term of supervised release. ECF No. 525. Defendant is currently housed at Federal Correctional Institute, Fort Dix ("FCI Fort Dix") in New Jersey.

On April 16, 2021, Defendant filed a pro se motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). ECF No. 780. Defendant alternatively requests an order recommending his transfer to Federal Correctional Institute, Milan ("FCI Milan") in Michigan. Because of mailing delays, his Motion was not docketed until April 27, 2021. Plaintiff, the United States of America (the "Government") responded to Defendant's Motion on April 30, 2021. ECF No. 785. As of the date of this Order, Defendant has not filed a reply brief.

For the reasons set forth below, Defendant's Motion for Compassionate Release and his accompanying request for a judicial recommendation will be denied.

**I.**

The United States is facing an unprecedented challenge with the COVID-19 pandemic.

> The COVID-19 virus is highly infectious and can be transmitted easily from person to person. COVID-19 fatality rates increase with age and underlying health conditions such as cardiovascular disease, respiratory disease, diabetes, and immune compromise. If contracted, COVID-19 can cause severe complications or death.

*Wilson v. Williams*, 961 F.3d 829, 833 (6th Cir. 2020). In light of the threat posed by COVID-19, Defendant seeks a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)—a form of relief often referred to as "compassionate release." Section 3582(c)(1)(A) provides,

> The court may not modify a term of imprisonment once it has been imposed except . . . upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission

18 U.S.C. § 3582(c)(1)(A). Accordingly, the threshold question is exhaustion. If exhaustion is found, courts must then follow the statute's three-step test:

> At step one, a court must "find[ ]" whether "extraordinary and compelling reasons warrant" a sentence reduction. At step two, a court must "find[ ]" whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." The Commission's policy statement on compassionate release resides in U.S.S.G. § 1B1.13. Thus, if § 1B1.13 is still "applicable," courts must "follow the Commission's instructions in [§ 1B1.13] to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." At step three, "§ 3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case."

*United States v. Jones*, 980 F.3d 1098, 1107–08 (6th Cir. 2020) (internal citations omitted). "In cases where incarcerated persons [as opposed to the Bureau of Prisons] file motions for

compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Id.* at 1111.

A.

As explained in the statute, before a court may consider an inmate's request for a reduced sentence under 18 U.S.C. § 3582, the inmate must first exhaust his administrative remedies with the Bureau of Prisons ("BOP") or wait 30 days after making such a request. The Sixth Circuit has explained that:

> By creating a compassionate-release option in the First Step Act, Congress gave inmates an option to seek early release on health grounds. The seriousness of COVID-19 and its spread in many prisons make it all the more imperative that the prisons have authority to process these applications fairly and with due regard for the seriousness of each inmate's risk. Free-floating exceptions to the rule, available to anyone willing to go to federal court first, will not help that cause.

*United States v. Alam*, 960 F.3d 831, 835–36 (6th Cir. 2020). Defendant sent a written request for compassionate release to the warden of FCI Fort Dix on February 23, 2021. ECF No. 780 at PageID.6388–90. His request was subsequently denied. *Id.* at PageID.6392. Accordingly, Defendant has exhausted his administrative remedies with the BOP.

B.

The next issue is whether sentence reduction is warranted by "extraordinary and compelling reasons." Because Defendant moves for compassionate release on his own behalf, § 1B1.13 is "inapplicable," and [u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release." *Jones*, 980 F.3d at 1109. Accordingly, courts of this circuit are no longer confined to the considerations outlined in the policy commentary when determining if a defendant's request is extraordinary and compelling,

such as whether an inmate suffers from a "terminal illness" or "serious physical or medical condition." U.S.S.G. § 1B1.13 cmt. n.1.

The Sixth Circuit's decision in *Jones*, *supra,* suggests that an inmate may have an extraordinary and compelling reason for release based on COVID-19 where he suffers from a medical condition identified as a risk factor for COVID-19. *See Jones*, 980 F.3d at 1102 n.6 (holding that inmate's prior exposure to tuberculosis "could be considered an extraordinary and compelling reason for compassionate release" because it "put him at risk of contracting the virus" or "serious long-term health problems" if he had already contracted it). Courts considering the issue post-*Jones* have agreed. *See*, *e.g.*, *United States v. Rucker*, No. 17-20716, 2020 WL 7240900, at *2 (E.D. Mich. Dec. 9, 2020) (HIV and asthma) (citing *Jones*, 980 F.3d at 1102 n.6); *United States v. White*, No. 18-20183, 2020 WL 7240904, at *3 (E.D. Mich. Dec. 9, 2020) (BMI of 45.9) (citing *Jones*, 980 F.3d at 1102 n.6); *United States v. Crowe*, No. CR 11-20481, 2020 WL 7185648, at *3 (E.D. Mich. Dec. 7, 2020) (latent tuberculosis, hyperlipidemia, obesity).

More recently, the Sixth Circuit affirmed the denial of compassionate release based on a two-part test for extraordinary and compelling reasons. *See Elias*, 984 F.3d at 520. Under the two-part test in *Elias*, the risk of contracting COVID-19 constitutes an extraordinary and compelling reason "(1) when the defendant is at high risk of having complications from COVID-19 and (2) the prison where the defendant is held has a severe COVID-19 outbreak."[1] *Id.* (quoting *United States v. Hardin*, No. 19-CR-240, 2020 WL 2610736, at *4 (N.D. Ohio May 22, 2020)). The Sixth Circuit also held that the district court, in evaluating the movant's medical conditions, "properly considered the CDC guidance that was in effect at the time," given that "[r]elying on official

---

[1] Consistent with *Jones*, the court emphasized that district courts need not apply this definition but that it is within their discretion to do so. *Elias*, 984 F.3d at 521 n.1.

guidelines from the CDC is a common practice in assessing compassionate-release motions." *Id.* at 521.

Defendant is a 37-year-old male who suffers from primary hypertension, obesity and was previously treated for tuberculosis. ECF No. 780 at PageID.6374. According to the Government, Defendant tested positive for COVID-19 in January 2021 but recovered from the disease the following month. ECF No. 785 at PageID.6418. Defendant, however, claims that he continues to suffer some unidentified symptoms. ECF No. 780 at PageID.6375.

Defendants' obesity and primary hypertension are recognized risk factors for COVID-19. *See Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html [https://perma.cc/NH4D-DKVU] (last visited May 19, 2021). Despite his risk factors, however, Defendant rejected the Moderna COVID-19 vaccine in early March 2021. ECF No. 785-1. The overwhelming weight of authority indicates that an inmate's refusal to accept the COVID-19 vaccine precludes him from relying on his susceptibility to the disease for purposes of compassionate release. *See, e.g.*, *United States v. Baeza-Vargas*, No. CR-10-00448-010-PHX-JAT, 2021 WL 1250349, at *3 (D. Ariz. Apr. 5, 2021) ("Judges of this Court, as well as others around the country, have ruled with consistency that an inmate's denial of a COVID-19 vaccination weighs against a finding of extraordinary and compelling circumstances.") (collecting cases); *United States v. Greenlaw*, No. 1:18-CR-00098-JAW-06, 2021 WL 1277958, at *7 (D. Me. Apr. 6, 2021) ("The risk-benefit analysis in favor of inoculation is so overwhelming that the Court holds Mr. Greenlaw's refusal to be vaccinated against his motion for compassionate release."); *United States v. Jackson*, No. CR 07-40-2, 2021 WL 1145903, at *2 (E.D. Pa. Mar. 25, 2021) (denying compassionate release where 58-year-old

defendant suffering from obesity, hypertension, asthma, and diabetes refused Moderna COVID-19 vaccine without explanation).

Importantly, this Court is not ordering Defendant to seek out or undergo vaccination. "Such an order would have constitutional implications." *Greenlaw*, 2021 WL 1277958, at *7. Nonetheless, in exercising its discretion under 18 U.S.C. § 3582(c)(1)(A), this Court is not obligated to overlook Defendant's unexplained refusal to be vaccinated. As one district court explained, "While [a defendant] is within his rights to refuse any treatment he wishes to forego, he cannot simultaneously claim that he must be released because of the risk of complications while refusing a vaccine that could virtually eliminate that risk." *United States v. Jackson*, No. 15-cr-260(7) (PAM/TNL), 2021 WL 806366, at *2 (D. Minn. Mar. 3, 2021). The Moderna COVID-19 vaccine is exceptionally safe and effective. *See Moderna*, CDC https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/Moderna.html [https://perma.cc/M3KW-2BL2] (last visited May 19, 2021). Absent some shift in the scientific consensus, or some good faith explanation for his behavior, Defendant's refusal to accept the COVID-19 vaccine precludes him from arguing that he should be released from custody based on his susceptibility to the disease.

Apart from Defendant's refusal to except vaccination, it bears noting that FCI Fort Dix, where Defendant is housed, is currently reporting zero active infections of COVID-19.[2] *See COVID-19*, BOP, https://www.bop.gov/coronavirus/ [https://perma.cc/W258-ACP7] (last visited May 19, 2021). The fact that 247 staff members and 1481 inmates at FCI Fort Dix have been fully inoculated against COVID-19 has no doubt contributed to the facility's current success. *Id.*

---

[2] The current situation at FCI Fort Dix is remarkable given that, since the pandemic began, 1786 inmates and 93 staff members at FCI Fort Dix have reportedly tested positive for the disease. *See COVID-19*, *supra*.

For the reasons set forth above, Defendant has not demonstrated an extraordinary or compelling reason for release as required under 18 U.S.C. § 3582(c)(1)(A).

## C.

Even if Defendant's susceptibility to COVID-19 were an extraordinary and compelling reason of release, his Motion would nonetheless be denied because he has not demonstrated that a sentence reduction is warranted by the applicable factors set forth in 18 U.S.C. § 3553. The applicable factors are provided in § 3553(a) as follows:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed--
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for--
>
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines…
>
> (5) any pertinent policy statement…
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). "District judges maintain an 'obligation to provide reasons' in both sentencing-modification decisions, and traditional sentencing decisions." *Jones*, 980 F.3d at 1112.

> District courts should consider all relevant § 3553(a) factors before rendering a compassionate release decision. But as long as the record as a whole demonstrate

> that the pertinent factors were taken into account by the district court, a district judge need not specifically articulate its analysis of every single § 3553(a) factor.

*Id.* at 1114 (internal quotations and citations omitted). Furthermore, "the district court's initial balancing of the § 3553(a) factors" is presumed to "remain[] an accurate assessment as to whether those factors justify a sentence reduction, meaning [that the defendant] must make a compelling case as to why the sentencing court's § 3553(a) analysis would be different if conducted today." *United States v. Sherwood*, 986 F.3d 951, 954 (6th Cir. 2021).

In 2015, federal agents, along with state and local law enforcement, began investigating a large drug trafficking ring operating in the southside of Saginaw, Michigan.[3] Through their investigation, police determined that Derek Duane Riley was supplying substantial quantities of cocaine and heroin to Damarlin Beavers, a high-ranking member of the local "Sunnyside Gang." The heroin distributed by the "Sunnyside Gang" was often laced with the deadly opioid fentanyl. Defendant, as a mid-level member of the conspiracy, purchased drugs from Beavers for further distribution. As part of his plea agreement, Defendant stipulated that he was liable for conspiring to distribute 711.65 grams of cocaine, 127.91 grams of cocaine base, 0.78 grams of fentanyl, and 632.06 grams of heroin. ECF No. 374 at PageID.1931.

Given his prior criminal history, which included previous convictions for the delivery of cocaine, Defendant's advisory guideline range 135 to 168 months. *See* ECF No. 558 at PageID.3482. After considering the factors set forth in 18 U.S.C. § 3553, this Court gave Defendant a sentence at the bottom of his guideline range: 135 months. *Id.* at PageID.3489.

In support of his Motion, Defendant represents that he has maintained good behavior since entering federal custody and that he has completed work assignments and correctional programming with positive evaluations from staff. *See* ECF No. 780 at PageID.6380–82.

---

[3] The facts recounted here are derived from Defendant's Presentence Investigation Report.

Defendant's efforts at rehabilitation are commendable. Nevertheless, with a release date in May 2026, Defendant still has a substantial portion of his original sentence remaining.

Given the seriousness of Defendant's underlying offense, his criminal history, and the substantial time remaining on his sentence, early release in this case would be inconsistent with the need "to promote respect for the law" and "to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(A)–(B). Accordingly, Defendant's Motion for Compassionate Release will be denied with prejudice.

### III.

In the concluding section of his Motion, Defendant alternatively requests that this Court "issue a nonbinding recommendation to the BOP to transfer [him] to FCI-Milan in Milan, Michigan to be close to his Family [sic]." ECF No. 780 at PageID.6385. Defendant identifies no authority in support of his request.

"[T]he Bureau of Prisons, not the federal courts, has exclusive authority to designate the place of confinement of federal prisoners." *United States v. Ovalle-Perez*, 51 F.3d 273 (6th Cir. 1995) (citing 18 U.S.C. § 3621(b)). Federal law does, however, require the BOP to consider the recommendation of the sentencing court with respect to the place of confinement. See 18 U.S.C. § 3621(b) (allowing the BOP to designate any facility "that the Bureau determines to be appropriate and suitable, considering . . . any statement by the court that imposed the sentence."). But even if this Court has the discretion to recommend the place of confinement years after sentencing,[4] Defendant has not shown that such discretion should be exercised here. Indeed, his

---

[4] Courts within this district have previously granted post-sentencing motions for placement recommendations. *See, e.g.*, *United States v. Hall*, No. 2:17-CR-20331-TGB, 2019 WL 3334564, at *2 (E.D. Mich. July 25, 2019) (recommending the defendant's placement in a residential reentry center). The propriety of this practice remains uncertain. *See United States v. Byrd*, No. 15-20040, 2020 WL 6255278, at *1 (E.D. Mich. Oct. 23, 2020) ("Courts in this District are divided over whether issuing such a recommendation after sentencing is appropriate. "). Furthermore, these judicial recommendation cases

only stated reason for the transfer is to be closer to family. Simply put, the BOP, not the sentencing court, is in the best position to determine whether Defendant should be transferred to FCI Milan.

**IV.**

Accordingly, it is **ORDERED** that Defendant's Motion for Compassionate Release, ECF No. 780, is **DENIED WITH PREJUDICE**.

It is further **ORDERED** that Defendant's request for a judicial recommendation for transfer to FCI Milan is **DENIED**.

Dated: May 20, 2021    s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

---

seem narrowly concerned with placement in a residential reentry center pursuant to the Second Chance Act, Pub. L. No. 110–199 (2008).