UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,                        Case No. 1:16-cr-20677-8

v.                                          Honorable Thomas L. Ludington
                                          Magistrate Judge Patricia T. Morris

EUGENE SMITH III,

                Defendant.

_____/

**ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

This matter is before this Court upon Defendant's Motion for Compassionate Release. ECF No. 812. For the reasons stated hereafter, Defendant's motion will be denied.

**I.**

On August 15, 2017, Defendant Eugene Smith III pleaded guilty to one count of conspiracy to possess with intent to distribute and to distribute cocaine and heroin, 21 U.S.C. §§ 841(a)(1), 846. ECF No. 374. He was sentenced to 135 months' incarceration and four years' supervised release. ECF No. 525. Defendant is currently housed at Federal Correctional Institute, Fort Dix ("FCI Fort Dix") in New Jersey.

On November 1, 2021, Defendant filed a pro-se motion for a sentence reduction under 18 U.S.C § 3582(c)(1)(A)—a form of relief commonly referred to as "compassionate release." ECF No. 812. In sum, Defendant seeks to have his sentence reduced to 108 months or time-served based on (1) his rehabilitation while incarcerated, (2) an intervening change in law, and (3) his susceptibility to the novel coronavirus ("COVID-19"). *Id.* at PageID.6653, 6663.

Defendant's motion is his third attempt to obtain compassionate release. In April 2021, he filed a motion for compassionate release based on his susceptibility to COVID-19. ECF No. 780.

That motion was denied on the merits. ECF No. 789. He then filed a motion for reconsideration. ECF No. 797. That motion was also denied. ECF No. 798.

Defendant's third attempt to obtain compassionate release fares no better. As explained below, Defendant's motion will be denied because he has shown neither (1) an extraordinary and compelling reason for release nor (2) that the factors set forth in 18 U.S.C. § 3553 warrant release.

**II.**

A motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) requires a two-part analysis.

The first part is exhaustion. A defendant may file a motion for a reduction under § 3582(c)(1)(A) only after requesting a reduction from the Bureau of Prisons (BOP) and then either (1) "fully exhaust[ing] all administrative rights" or (2) waiting until "30 days [have elapsed] from the receipt of such a request by the warden." *See* 18 U.S.C. § 3582(c)(1)(A). This first step is a "mandatory claim-processing rule[]" that "must be enforced" if "properly invoked." *United States v. Alam*, 960 F.3d 831, 834 (6th Cir. 2020).

The second part involves the Sixth Circuit's three-step test:

> At step one, a court must find whether extraordinary and compelling reasons warrant a sentence reduction. At step two, a court must find whether such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. At step three, § 3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by steps one and two is warranted in whole or in part under the particular circumstances of the case.

*United States v. Jones*, 980 F.3d 1098, 1107–08 (6th Cir. 2020) (cleaned up). If any of § 3582(c)(1)(A)'s three prerequisites are missing, this Court may deny the compassionate-release motion without further analysis. *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021).

## III.

### A.

The first issue is whether, before filing his motion, Defendant requested compassionate release from the BOP and then either (1) received a denial and fully exhausted his administrative remedies or (2) received no response but waited at least 30 days before filing. *See* 18 U.S.C § 3582(c)(1)(A).

Defendant sent a letter to the warden at FCI Fort Dix in August 2021 requesting compassionate release for the same reasons provided in his motion. *See* ECF No. 812 at PageID.6666–67. Apparently, he never received a response. Accordingly, Defendant has exhausted his remedies with the BOP.

### B.

The next issue is whether "extraordinary and compelling reasons" justify reducing Defendant's sentence. *See United States v. Jones*, 980 F.3d 1098, 1107–08 (6th Cir. 2020). Although Congress has not defined "extraordinary and compelling reasons," the United States Sentencing Commission has identified several reasons that qualify as "extraordinary and compelling." *See* U.S. SENT'G GUIDELINES MANUAL § 1B1.13 cmt. n.1 (U.S. SENT'G COMM'N 2018) (identifying certain medical conditions, ages, and family circumstances, including reasons determined by the Director of the BOP).

This Court may consider § 1B1.13 in deciding whether Defendant has shown an extraordinary and compelling reason for release, but because Defendant filed his motion on his own behalf, § 1B1.13 is nonbinding. *See Jones*, 980 F.3d at 1109 ("[Section] 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release."); *see also United States v. Tomes*, 990 F.3d 500, 503 n.1 (6th Cir. 2021) (noting that district courts may "consider

[§ 1B1.13] as part of its discretionary inquiry into whether a case presents extraordinary and compelling reasons for release"). Rather, "[i]n cases where incarcerated persons file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Jones*, 980 F.3d at 1109.

But of course, that discretion is not unfettered. *See United States v. Hunter*, 12 F.4th 555, 562 (6th Cir. 2021). Recently, the Sixth Circuit endorsed a textual analysis through which courts must look to the ordinary meaning of the terms "extraordinary" and "compelling." *See id.* (noting that when § 3582(c) was enacted, "extraordinary" meant "most unusual, far from common, and having little or no precedent," and "compelling" meant "forcing, impelling, driving." (cleaned up) (quoting WEBSTER'S THIRD INTERNATIONAL DICTIONARY: UNABRIDGED 463, 807 (1971))).

Consistent with *Hunter*, this Court must determine whether Defendant's reasons for a reduced sentence are "extraordinary" and "compelling," as commonly understood. *See id.*; *see also United States v. Powell*, No. 2:12-CR-20052-2, 2021 WL 613233, at *2 (E.D. Mich. Feb. 17, 2021) ("Several cases in the Eastern District of Michigan have adopted textual analyses to determine what reasons are 'extraordinary and compelling[.]'") (collecting cases).

Defendant advances three reasons for his release: (1) his rehabilitation while incarcerated, (2) an intervening change in law, and (3) his susceptibility to the novel coronavirus ("COVID-19"). *See* ECF No. 812 at PageID.6653, 6663. Whether considered independently or in combination, those reasons are neither extraordinary nor compelling for purposes of compassionate release.

**i.**

Defendant's first reason for release is his rehabilitation while incarcerated. *See* ECF No. 812 at PageID.6653. Though Congress has said little about what constitutes an "extraordinary and compelling reason," *see* 18 U.S.C. § 3582(c)(1)(A), it has made clear that "[r]ehabilitation of the defendant alone *shall not* be considered an extraordinary and compelling reason," 28 U.S.C. 994(t) (emphasis added). For this reason, Defendant's rehabilitation alone does not justify reducing his sentence. *See United States v. McCall*, 20 F.4th 1108, 1114 (6th Cir. 2021) ("The district court correctly held that, if [the petitioner] argued for extraordinary and compelling circumstances based on his rehabilitation alone, the district court could not consider the argument.").

**ii.**

Defendant's second reason for release is an intervening change in law. *See* ECF No. 812 at PageID.6654–57. Specifically, Defendant argues that if this Court sentenced him today, his two-level enhancement for maintaining a drug premises would not apply due to the Sixth Circuit's decision in *United States v. Whiteside*, 747 F. App'x 387 (6th Cir. 2018) (unpublished).

Until recently, it was unclear whether a district court in this circuit could consider nonretroactive changes in the law during its extraordinary-and-compelling analysis. *See United States v. Tomes*, 990 F.3d 500, 505 (6th Cir. 2021) (holding that district courts may not consider sentencing disparities created by the First Step Act's (FSA) nonretroactive amendments because doing so would render the FSA's nonretroactive provisions "useless"); *United States v. Owens*, 996 F.3d 755, 763 (6th Cir. 2021) (holding that *Tomes* did not "foreclose [the] middle path" of allowing district courts to consider disparities caused by nonretroactive amendments "along with other factors"); *United States v. Jarvis*, 999 F.3d 442, 445 (6th Cir. 2021) (declining to follow

*Owens* because it conflicts with the earlier-decided *Tomes*); *McCall*, 20 F.4th at 1115 (distinguishing *Owens* from *Tomes*, and holding that *Owens* "remains controlling authority").

But based on *McCall*, the answer is "Yes". Indeed, "a court *may* consider a nonretroactive change in the law as *one of several factors* forming extraordinary and compelling circumstances qualifying for sentence reduction." *McCall*, 20 F.4th at 1116 (emphases added). *But see id.* (arguing that the majority's adoption of *Owens* over *Tomes* "render[ed] the law on the issue presented unknowable") (Kethledge, J., dissenting).

As a threshold matter, this is good news for Defendant, who, like others seeking compassionate release, has advanced multiple reasons for a sentence reduction. *Cf. McCall*, 20 F.4d at 1116 (noting that "[m]ovants for compassionate release nearly always" offer more than one reason for release) (Kethledge, J., dissenting). The problem is that *Whiteside*, unlike certain FSA amendments, did not effect a "change in the law." In *Whiteside*, a defendant who was convicted of several drug offenses argued on direct appeal that his two-level enhancement under USSG § 2D1.1(b)(12) was erroneous, because the Government failed to prove that he had control over the alleged drug houses. *Whiteside*, 747 F. App'x at 394. The Government conceded that the issue should be remanded to the district court, and the Sixth Circuit agreed. *Id.* Given the conflicting evidence regarding the *Whiteside* defendant's role in the drug sales and his presence at the houses, the Sixth Circuit held that the Government had failed to prove the defendant exercised "de facto control" over the houses. *See id.* at 394–395 (quoting *United States v. Hernandez*, 721 F. App'x 479, 484 (6th Cir. 2018) (unpublished)).

Accordingly, *Whiteside* did not alter the standard for a two-level enhancement under USSG § 2D1.1(b)(12); it simply applied that standard to a record the Government conceded was insufficient. The standard for a § 2D1.1(b)(12) enhancement is the same as it was before *Whiteside*.

To elaborate, "[t]he drug-premises enhancement has three elements: The defendant must (1) knowingly (2) open or maintain any place (3) for the purpose of manufacturing or distributing a controlled substance." *Id.* at 394 (citing *United States v. Johnson*, 737 F.3d 444, 447 (6th Cir. 2013)).

The maintenance element depends on two factors: (1) "whether the defendant held a possessory interest in . . . the premises" and (2) "the extent to which the defendant controlled access to, or activities at, the premises." *Id.* (quoting USSG § 2D1.1, cmt. n.17). The lack of a possessory interest is not dispositive provided that "the [G]overnment makes a sufficient showing of de facto control." *Id.* (quoting *United States v. Hernandez*, 721 F. App'x 479, 484 (6th Cir. 2018)).

This same standard applied in *Whiteside* was also applied (and carefully briefed) in this case. *See* Def.'s Sentencing Mem., ECF No. 522 at PageID.3208–10; Govt.'s Sentencing Mem., ECF No. 524 at PageID.3235–40; Sentencing Hr'g Tr., ECF No. 558 at PageID.3470–82. Based on Defendant's admissions, the testimony of his co-conspirators, and the testimony of the lead FBI agent, this Court found that Defendant exercised sufficient control over the alleged "stash house" for purposes of section 2D1.1(b)(12). *See* ECF No. 558 at PageID.3481–82. Defendant does not explain how that decision was erroneous or why *Whiteside* demands a different result.

For these reasons, the Sixth Circuit's intervening decision in *Whiteside* does not justify a sentence reduction.

### iii.

Defendant's third and final reason for release is his susceptibility to COVID-19. *See* ECF No. 812 at PageID.6654. As noted in a prior order, "Defendant is a 37-year-old male who suffers from primary hypertension, obesity and was previously treated for tuberculosis." Order Den.

Def.'s Mot. for Compassionate Release, ECF No. 789 at PageID.6472. These health conditions are known risk factors for COVID-19. *See People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html [https://perma.cc/4MB5-R8AC] (listing obesity, hypertension, and tuberculosis as risk factors).

Even if Defendant's susceptibility to COVID-19 is extraordinary in some sense, it is not compelling. Despite the emergence of the new Omicron variant, the CDC maintains that the best protection against COVID-19 are the vaccines. *See Omicron Variant: What You Need to Know*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/variants/omicron-variant.html [https://perma.cc/SVG4-XQM8] ("Current vaccines are expected to protect against severe illness, hospitalizations, and deaths due to infection with the Omicron variant."). Indeed, preliminary data suggests that a three-dose regimen of the RNA vaccines (Moderna or Pfizer-BioNTech) provides substantial protection against hospitalization. *See* Philippa Roxby & Jim Reed, *Covid Booster 88% Effective Against Hospital Treatment with Omicron*, BBC (Dec. 31, 2021), https://www.bbc.com/news/health-59840524 [https://perma.cc/RM5D-YT3U].

Despite the effectiveness of the COVID-19 vaccines, Defendant refused the Moderna vaccine in March 2021 and has yet to be vaccinated. *See* Def.'s Medical Rs., ECF No. 816 at PageID.6802 (filed under seal). His only explanation for refusing the Moderna vaccine is his fear of "severe side effects." *See* ECF No. 792 at PageID.6481. Although Defendant's concerns about the vaccine may be sincere, the data suggests that that all "COVID-19 vaccines are safe and effective." *See Safety of COVID-19 Vaccines*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/safety/safety-of-vaccines.html [https://perma.cc/BTQ2-N9B7] (noting that "COVID-19 vaccines will continue to undergo the most intensive safety monitoring in US

history," and that serious side effects are "extremely unusual"). It is Defendant's choice whether to get vaccinated, but his decision to forego vaccination without a legitimate reason weighs heavily against his claim that he should be released due to the risk of COVID-19. *See United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021) ("[A] defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction.").

Moreover, Defendant previously tested positive for COVID-19 and apparently recovered. *See* ECF No. 816 at PageID.6834 (recording positive COVID-19 test in January 2021) (filed under seal). Although Defendant's risk of exposure may be higher at FCI Fort Dix than at home, he at least has access to effective medical care at FCI Fort Dix, as proven by his medical records.[1] *See generally* ECF No. 816 (filed under seal). It is unclear whether the same would be true if he was released.

For these reasons, Defendant's susceptibility to COVID-19 does not justify a sentence reduction.[2]

**iv.**

As a final matter, this Court must consider whether Defendant's proffered reasons, in combination, warrant a sentence reduction. *See United States v. McCall*, 20 F.4th 1108, 1113 (6th Cir. 2021) (holding that the district court abused its discretion by not considering the defendant's

---

[1] Defendant claims that his care at FCI Fort Dix has been "inadequate" but does not elaborate or provide any examples. *See* ECF No. 812 at PageID.6661.
[2] Insofar as Defendant claims that his health conditions *themselves* are extraordinary and compelling, the same conclusion applies. Defendant does not explain why these conditions are extraordinary and compelling, and even if they are extraordinary in some sense, this Court is not inclined to find them compelling absent some additional showing of serious and debilitating symptoms. Further, according to his medical records, Defendant is prescribed medication for his hypertension, and BOP medical staff have counseled him on dieting and exercise. *See* ECF No. 816 at PageID.6753, 6755 (filed under seal).

sentencing disparity, rehabilitation, and risk of COVID-19 "in combination")). Defendant's two

cognizable reasons are his rehabilitative efforts and his susceptibility to COVID-19.

Like many inmates, Defendant has taken advantage of the BOP's correctional programs

while incarcerated. *See* ECF No. 812 at PageID.6659 (claiming to have both completed "several

ACE Classes" and earned "Excellent Work Evaluations"). And like all inmates who strive to better

themselves in custody, he is commended for his efforts. But there is no indication from the record

that Defendant's rehabilitation has been unusually extensive or compelling. Viewing the facts as

a whole, Defendant is a willfully unvaccinated inmate with underlying health conditions who has

made some efforts at rehabilitation. On balance, Defendant's predicament is neither extraordinary

nor compelling.

### C.

The final issue is whether 18 U.S.C. § 3553's applicable factors justify a reduced sentence.

*See United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020). Ordinarily, this Court would

decline to proceed to the final issue—whether the § 3553 factors warrant release—because the

lack of an extraordinary and compelling reason for release is dispositive. *See United States v. Elias*,

984 F.3d 516, 519 (6th Cir. 2021) ("[D]istrict courts may deny compassionate-release motions

when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address

the others."). But in the interest of thoroughness, this Court will consider the application of the §

3553 factors.

The relevant factors are as follows:

(1) the nature and circumstances of the offense and the history and characteristics
of the defendant;
(2) the need for the sentence imposed—
    (A) to reflect the seriousness of the offense, to promote respect for the law,
    and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;

        (C) to protect the public from further crimes of the defendant; and
        (D) to provide the defendant with needed educational or vocational training,
        medical care, or other correctional treatment in the most effective manner;
    (3) the kinds of sentences available;
    (4) the kinds of sentence and the sentencing range established for—
        (A) the applicable category of offense committed by the applicable category
        of defendant as set forth in the guidelines—
        . . . .
    (5) any pertinent policy statement—
        . . . .
    (6) the need to avoid unwarranted sentence disparities among defendants with
similar records who have been found guilty of similar conduct; and
    (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Although this final step requires more than a casual reference the § 3553(a) factors, *see*

*Jones*, 980 F.3d at 1112 (noting that judges must "provide reasons in both sentencing-modification

decisions, and traditional sentencing decisions"), "a district [court] need not specifically articulate

its analysis of every single § 3553(a) factor" if "the record *as a whole* demonstrates that the

pertinent factors were taken into account," *id.* at 1114 (internal quotations marks omitted). Further,

Defendant bears the burden to "make a compelling case as to why the . . . § 3553(a) analysis would

be different if conducted today." *United States v. Sherwood*, 986 F.3d 951, 954 (6th Cir. 2021)

(noting that a "district court's initial balancing of the § 3553(a) factors . . . [presumably] remains

an accurate assessment as to whether those factors justify a sentence reduction.").

Having already applied the § 3553(a) to Defendant's case twice in the past 12 months, *see*

ECF Nos. 789; 798, a lengthy analysis is unnecessary. As previously noted, Defendant was

convicted of conspiring to distribute cocaine and heroin for his role in a drug-trafficking

conspiracy affiliated with the "Sunnyside Gang." ECF No. 789 at PageID.6475. As a mid-level

gang member, he admitted to conspiring to distribute some 711.65 grams of cocaine, 632.06 grams

of heroin, 127.91 grams of cocaine base, and 0.78 grams of fentanyl. *Id.* He also has a previous conviction for delivering cocaine. *Id.*

As Defendant acknowledges in his motion, a substantial portion of his 135-month sentence remains. *See* ECF No. 812 at PageID.6659 (claiming that he "served roughly 52.5% of his [sentence]"). Although this Court respects and appreciates his desire to lead a positive life, a sentence reduction is not warranted at this time. Given the seriousness of the underlying offense, Defendant's criminal history, and the "need to afford adequate deterrence," *see* 18 U.S.C. § 3553(a), Defendant should continue to serve his full term of incarceration.

For these reasons, Defendant has not carried his burden to convince this Court that his § 3553(a) analysis should be different today.

**IV.**

Accordingly, it is **ORDERED** that Defendant's Motion for Compassionate Release, ECF No. 812, is **DENIED**.

Dated: February 8, 2022                          s/Thomas L. Ludington
                                                 THOMAS L. LUDINGTON
                                                 United States District Judge